## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

UNITED STATES OF AMERICA

v.                                                    CRIMINAL  ACTION  NO. 3:07-00126

ANTHONY MCWILLIAMS
      also known as "Big Dog," "Big Bro,"
      "Solomon Sain," "Mano," "Uncle,"
      "Anthony Harris," "Martin Wiseman"
TYRON ANTUAN DREW
      also known as "Nephew"
ROBERT HENDERSON
      also known as "Slim"
WILLIE JAMES FONDREN
      also known as "Sko," "Esko"
DANIEL RODRICK RICE
ROY ALLEN HOLLEY
PHILLIP SHANE MORRISON
CARL SMITH
JOSEPH EDWARD BROOKS
RICO ANDRE BAILEY
ROBERT SAMUEL CRUTCHER, JR.
      also known as "Bo"
SHERIFA LEJUAN MCCLURE
      also known as "Red"

## MEMORANDUM OPINION AND ORDER

Pending before the Court are the above defendants' motions to exclude audiotape evidence. [Nos. 430, 435, 438, 440, 444, 445, 446, 447, 451, 458, and 516 and the oral motion to join in with these motions made by counsel for Robert Henderson].  The defendants move to exclude all audiotapes obtained by the Government pursuant to wiretap warrants which were issued in the investigation of this case.  For the following reasons, the Court **GRANTS** the motions and **EXCLUDES** the use of the audiotape evidence in this case.

# I.
# FACTS

On April 18, 2007, the Government filed an Application for Interception and Recording of Wire Communications pursuant to 18 U.S.C. § 2518.  The action was sealed and assigned to Chief Judge David A. Faber of the Southern District of West Virginia.  Chief Judge Faber approved the initial application for a period of thirty days.  On May 16, 2007, Chief Judge Faber authorized the warrants to continue for an additional thirty days. According to the Government, the warrants produced approximately 12,000 taped phone calls, of which approximately 2,500 were relevant to the alleged distribution of controlled substances, and expired on June 13, 2007.

The Government states that on June 14, 2007, the master disc containing the recorded conversations was placed in a self-sealing evidence bag and was initialed by Special Agent Tom E. Bevins and witnessed by Lt. Albers of the Huntington Police Department.  The bag was then placed in a portable safe at the Huntington Police Department and later Agent Bevins transported the safe to a vault at the Drug Enforcement Agency's headquarters located in Charleston, West Virginia. In an affidavit submitted by the Assistant United States Attorney (AUSA) who handled the matter, she states that the Government decided not to contact the Court to have the disc sealed until after the defendants were arrested and preliminary hearings conducted.  Although officers retained copies of some or all of the recordings, the Government delayed seeking the seal so as to keep the master disc available should it be needed at the preliminary hearings.  The Government states the master disc was never used or opened.

Agents began arresting several of the defendants on the day the warrants expired. Preliminary hearings were held on June 19, 21, and 26, 2007. The AUSA assigned the case at that time states that the substance of the calls was used against the defendants at the preliminary hearings to establish probable cause. Following the last preliminary hearing, the AUSA avers that she contacted Chief Judge Faber's office on that same day and was informed the Chief Judge would be out of the office until July 10, 2007. The AUSA states she called Chief Judge Faber's office again on June 27, 2007, and she received confirmation the Chief Judge could not sign an order to formally seal the master disc until July 10, 2007. Thus, on July 10, 2007, the AUSA and Agent Bevin met with Chief Judge Faber who signed the order formally sealing the master disc.

## II.
## DISCUSSION

The issue now before the Court is whether the delay in formally sealing the disc should result in its exclusion. At oral argument held on December 10, 2007, the Government conceded that it did not immediately present the master disc to Chief Judge Faber to be formally sealed pursuant to § 2518. Nevertheless, the Government states it did not violate the provisions of § 2518 because it has a satisfactory explanation as to why the master disc was not sealed for more than three weeks. Pursuant to § 2518(8)(a):

> The contents of any wire, oral, or electronic communication intercepted by any means authorized by this chapter shall, if possible, be recorded on tape or wire or other comparable device. The recording of the contents of any wire, oral, or electronic communication under this subsection shall be done in such a way as will protect the recording from editing or other alterations. Immediately upon the expiration of the period of the order, or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions.

-3-

> Custody of the recordings shall be wherever the judge orders. They shall not be destroyed except upon an order of the issuing or denying judge and in any event shall be kept for ten years. Duplicate recordings may be made for use or disclosure pursuant to the provisions of subsections (1) and (2) of section 2517 of this chapter for investigations. The presence of the seal provided for by this subsection, or a satisfactory explanation for the absence thereof, shall be a prerequisite for the use or disclosure of the contents of any wire, oral, or electronic communication or evidence derived therefrom under subsection (3) of section 2517.

18 U.S.C. § 2518(8)(a). In *United States v. Ojeda Rios*, 495 U.S. 257 (1990), the United States Supreme Court addressed the requirements of this statute and set forth guidelines that courts must follow in ruling on motions to exclude.

In *Ojeda Rios*, the defendants moved to suppress electronic surveillance tapes based upon the Government's failure to timely seal the tapes. The Court began its discussion by noting that § 2518 "has an explicit exclusionary remedy for noncompliance with the sealing requirement, providing that '[t]he presence of the seal provided for by this subsection, or a satisfactory explanation for the absence thereof, shall be a prerequisite for the use or disclosure of the contents of any wire, oral, or electronic communication or evidence derived therefrom under subsection (3) of section 2517.'" 496 U.S. at 260 (quoting 18 U.S.C. § 2518(8)(a); footnotes omitted). The Court further recognized that the "satisfactory explanation" requirement in the statute extends not only to the "'absence' of a seal but also the absence of a timely seal." *Id.* at 263 (quoting 18 U.S.C. § 2518(8)(a)). According to the Court, the purpose of the sealing requirement

> is to ensure the reliability and integrity of evidence obtained by means of electronic surveillance. The

-4-

> presence or absence of a seal does not in itself establish the integrity of electronic surveillance tapes. Rather, the seal is a means of ensuring that subsequent to its placement on a tape, the Government has no opportunity to tamper with, alter, or edit the conversations that have been recorded.  It is clear to us that Congress viewed the sealing requirement as important precisely because it limits the Government's opportunity to alter the recordings.

*Id.*  In order to comply with the statute, the Court emphasized that a mere explanation by the Government as to why there was not an immediate seal is insufficient as the statute expressly requires that the Government give a *"satisfactory* explanation" for the delay. *Id.* at 264 (emphasis original).  In this regard, the Court explained that

> [i]t is difficult to imagine a situation in which the Government could not explain *why* it delayed in seeking to have tapes sealed.  Even deliberate delay would be enough, so long as the Government could establish the integrity of the tapes; yet deliberate delay could hardly be called a satisfactory explanation.  To hold that proof of nontampering is a substitute for a satisfactory explanation is foreclosed by the plain words of the sealing provision.

*Id.* at 264-65 (emphasis original).  Even if the Government could prove the authenticity of the tapes, the Court found that Congress obviously intended more by imposing the sealing safeguard. *Id.* at 265.  Thus, the Court determined "that the 'satisfactory explanation' language in § 2518(8)(a) must be understood to require that the Government explain not only why a delay occurred but also why it is excusable.  This approach surely is more consistent with the language and purpose of § 2518(8)(a)." *Id.*  According to the Court, a reasonable excuse does not require the Government to prove that its "particular understanding of the law is correct but rather only that its interpretation was objectively reasonable at the time." *Id.*

Here, there was a thirteen-day delay between the day the warrants expired and the day the Government contacted Chief Judge Faber's office to have the master disc sealed. As Chief Judge Faber was unavailable at that time, there was an additional fourteen-day delay before the order sealing the master disc was signed, for a total delay of twenty-seven days. As previously mentioned, the Government concedes that the master disc was not immediately sealed so the primary issue for the Court to determine is whether the Government has offered a satisfactory explanation for the delay.

Considering the initial thirteen-day delay first, the Government asserts that it did not immediately contact a judge to have the master disc sealed when the warrant expired because it believed it may need the master disc for the preliminary hearings. However, the Court finds that this explanation is not satisfactory under the mandates of *Ojeda Rios* for several reasons. Initially, the Court notes the Government admits it made copies of the master disc that were available for it to use for preparation for and at the preliminary hearings if such became necessary. Despite the availability of these copies, the Government explains that it merely wanted to keep the master disc available as insurance in the event there were any problems with the copies. When questioned by the Court at the pretrial hearing about this reasoning, the Government agreed with the Court that, if the master disc had been immediately sealed, Chief Judge Faber had complete authority to release the disc so additional copies could be made if needed. The AUSA arguing in response to the defendants' motions also stated that he was unsure if that possibility was ever considered when the

decision to retain the master disc was made.[1]  In addition, the Government offered no evidence that

there was any reason to suspect there would be problems with the copies they had made.  If the

Court were to find the Government's reasoning for retaining the master disc is sufficient under these

circumstances to demonstrate a "satisfactory explanation" under § 2518(8)(a) and *Ojeda Rios*, the

Government could arguably retain the master disc until after its case against the defendants was

complete.  Clearly, the Government retained the master disc merely as matter of convenience, and

the Government has offered no objectively reasonable interpretation of the law to permit it to delay

requesting the disc be sealed for its convenience.  Therefore, under the facts presented in this case,

the Court finds the mere fact it was more convenient for the Government to retain custody of the

master disc until the completion of the preliminary hearings does not constitute a "satisfactory

explanation" under § 2518(8)(a).

In support of its position that it has offered a satisfactory explanation, the

Government cites *United States v. Diana*, 605 F.2d 1307 (4th Cir. 1979).  The Court finds the facts

of *Diana* are distinguishable from the present case.  In *Diana*, the Fourth Circuit affirmed the district

court's decision that the Government offered a satisfactory explanation to justify a thirty-nine day

delay in formally sealing surveillance tapes.[2]  In *Diana*, the district court found that duplicate tapes

had malfunctioned in the past and "the original tapes were necessary in the event that the duplicate

tapes could not mechanically provide the needed information in preparing warrants, indictment and

---

[1]The AUSA arguing in response to the defendants' motions is not the same AUSA who handled sealing the master disc.

[2]There was some dispute as to when the actual sealing occurred, but the Fourth Circuit gave the defendants the benefit of the doubt in assuming the delay was thirty-nine days.  605 F.2d at 1311.

transcripts . . . ." 605 F.2d at 1314-15. In the present case, however, the Government offered no

evidence that they had experienced any problems with duplicate discs in the past.[3]

In addition, the Fourth Circuit in *Diana* found several other factors supported the

admission of the tapes. First, the Fourth Circuit stated it was "not abundantly clear that the

government violated the statute" because of a dispute as to when the district judge gave an oral order

sealing the tapes. *Id.* at 1315. Next, the Court looked to the length of delays in cases from other

jurisdictions and the Fourth Circuit at least implied that the length of the delay before it was not

excessive. *Id.* "Finally, and just as important, [the Fourth Circuit noted] the defendants do not allege

and no evidence was presented to show that the tapes were tampered with or altered in any way."

*Id.* The Fourth Circuit continues on to say that "[t]he integrity of the tapes is not questioned, and

we take into account the extra precautions taken with respect to them. Therefore, the purpose of the

sealing requirement has been fulfilled, and . . . this fact is important in deciding whether a

satisfactory explanation has been provided." *Id.*

Significantly, *Diana* was decided prior to the Supreme Court's decision in *Ojeda*

*Rios.* In making this last point, the Fourth Circuit relied heavily upon and agreed with decisions of

the Third, Fifth, and Seventh Circuits "that the purpose of the sealing requirement is to insure the

integrity of the tapes. We further hold that an inquiry into this subject is appropriate in determining

whether a satisfactory explanation has been provided." *Id.* at 1314 (citing earlier *United States v.*

---

[3]Even before *Ojeda Rios* applied, a speculative concern about malfunctioning copies failed
to provide an excusable explanation. *See United States v. Feiste*, 961 F.2d 1349 (8th Cir. 1992).

*Diadone*, 558 F.2d 775 (5th Cir. 1977); *United States v. Lawson*, 545 F.2d 557 (7th Cir. 1975);

*United States v. Angelini*, 565 F.2d 469 (7th Cir. 1977); *United States v. Sklaroff*, 506 F.2d 837 (5th

Cir. 1975); and *United States v. Falcone*, 505 F.2d 478 (3d Cir. 1974), in part).  In *Ojeda Rios*,

however, the Supreme Court expressly rejected these exact same cases for the proposition that

"proof of nontampering is a substitute for a satisfactory explanation" under § 2518(8)(a). 495 U.S.

at 264-65 and n.5.  Thus, the fact the Government argues in this case that there is no evidence the

master disc was compromised is not determinative.[4]

The defendants also assert the Government may not rely upon the delay attributable

to Chief Judge Faber's unavailability to support a finding of a "satisfactory explanation."  The

defendants argue the additional fourteen-day delay may have been prevented had the Government

promptly contacted the Court at the expiration of the warrant.  In addition, the defendants insist that,

once learning of Chief Judge Faber's unavailability, the Government could have contacted another

district judge to seal the master disc.  On the other hand, the Government asserts that a judge's

unavailability is a "satisfactory explanation" for a delay. *Citing United States v. Pedroni*, 958 F.2d

262, 266 (9th Cir. 1992) (stating "[t]he unavailability of the issuing or supervising judge may

constitute a satisfactory explanation for a sealing delay")[5]; *United States v. Fury*, 554 F.2d 522, 533

---

[4]According to the Government, the master disc was never actually needed or used before it
was formally sealed.

[5]The court in *Pedroni* also cited cases which found "[t]he failure to seal immediately because
of resource or personnel shortages has . . . been deemed a 'satisfactory explanation.'" 958 F.2d at
266 (citing, in part, *United States v. Massino*, 784 F.2d 153, 154-55 & 158 (2d Cir. 1986) (holding
a fifteen-day delay was permissible where there was a leak of confidential information and an urgent
and unforeseeable need to use all available manpower to investigate the source of the leak) (other
(continued...)

-9-

(2d Cir. 1977) (finding a six-day delay reasonable when issuing justice was on vacation).  Although the Court recognizes that both parties raise legitimate arguments on this point, the Court need not resolve the matter because the Court has found that the Government has not offered any "satisfactory explanation" as to why the master disc was not immediately sealed upon the expiration of the warrant prior to the time it contacted Chief Judge Faber's Office.  Thus, even if the Court would find the unavailability of Chief Judge Faber is a "satisfactory explanation," the initial thirteen-day delay is without a "satisfactory explanation" and, therefore, the audiotape evidence must be excluded.

In making this decision, the Court recognizes that a considerable amount of Government resources were expended in conducting the wiretaps and those recordings are now unuseable.  However, this Court is bound to enforce the law and, in this case, the Government has failed to comply with the requirements of § 2518(8)(a).  As that statute contains "an explicit exclusionary remedy for noncompliance with the sealing requirement," this Court **GRANTS** the motions of the defendants to exclude the audiotape evidence. *Ojeda Rios*, 496 U.S. at 260.

---

[5](...continued)
citations omitted).  In this case, there is no suggestion that the initial thirteen-day delay was caused by a lack of manpower or the actual occurrence of an unforeseeable event.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel and the defendants, the U.S. Attorney's Office, the U.S. Probation Office, and the U.S. Marshals' Service.

ENTER:          January 10, 2008

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE